626 F.2d 1272
 24 Fair Empl.Prac.Cas. 1279,
24 Empl. Prac. Dec. P 31,284
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
Southern Methodist University Association of Women Law
Students, Lawyer A, Lawyer B, Lawyer C and Lawyer D, on
behalf of themselves, the women members of the Association,
and all women situated similarly to the women members of the
Association and to Lawyer A, Lawyer B, Lawyer C and Lawyer
D, and Neil Cogan, Plaintiffs-Intervenors-Appellants,
v.
STRASBURGER, PRICE, KELTON, MARTIN AND UNIS, Defendant-Appellee.
 No. 78-1613.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 2, 1980.
 
 Neil H. Cogan, pro se and for plaintiffs-intervenors.
 Smith, Smith, Dunlap & Canterbury, George C. Dunlap, Bowen L. Florsheim, Dallas, Tex., for Strasburger, Price, Kelton, Martin and Unis.
 Appeal from the United States District Court for the Northern District of Texas.
 Before THORNBERRY, GODBOLD and TATE, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 Plaintiffs-intervenors challenge as inadequate an award to them of $2500 attorney fees in this civil rights action.
 
 
 2
 This suit was filed December 9, 1976, by the Equal Employment Opportunity Commission against Strasburger, Price, Kelton, Martin & Unis, a Dallas, Texas law firm, alleging sex discrimination against females in the hiring of attorneys and summer interns, in violation of Title VII of the Civil Rights Act of 1964, as amended.[1] Shortly thereafter, in December 1976, a petition to intervene was filed by the Southern Methodist University Association of Women Law Students, which sought to intervene on its own behalf and as representative of a class and of unidentified individuals (including the members of the Association). Defendant opposed the intervention. In March 1977 an amended motion to intervene was filed in which four individuals identified only as Lawyers A, B, C and D were added as potential intervenors (on their own behalf and as representatives of a class and of other unidentified persons). The amended motion to intervene was granted in May 1977 as to both the Association and the lawyers, but the order granting the motion required that in intervening Lawyers A-D must use their given names.
 
 
 3
 The putative intervenors did not file the necessary pleadings to become formal parties until November 2, 1977. In the interim they were seeking protective orders that would permit the identities of Lawyers A-D to remain undisclosed; also, for the same reason they filed an interlocutory appeal from the order permitting intervention. During this period the defendants sought to depose the putative intervenors, who took the position that they were not subject to discovery procedures because they were not formal parties. In late September, with trial upcoming, the district judge ordered the Association and Lawyers A-D to file their complaint in intervention by October 5. On October 6 the parties agreed that a protective order would be entered limiting the disclosure of the identities of Lawyers A-D to a small number of lawyers. The trial was postponed to December 5. The terms of a protective order were agreed upon on November 2, and on that date the complaint in intervention was filed and the putative intervenors became parties for the first time. Later the interlocutory appeal to this court was dismissed.
 
 
 4
 In late November, approximately a week before the trial date, the parties entered into a settlement agreement that was later approved by the court. The settlement agreement was ordered sealed. We have examined it, and we refer to its terms only to the extent necessary for a determination of the case before us. The agreement provided substantial relief for the intervenors. EEOC and the defendant law firm were each to bear its own costs. Attorney fees, if any, were to be set by the district judge. The case was dismissed. Pursuant to the settlement agreement, and after hearing, the district judge entered an order awarding attorney fees of $2500 to the intervenors. The intervenors appealed, asserting that the award is inadequate.[2]
 
 
 5
 In its order awarding the attorney's fee, the district court noted that the attorney for the intervenors had testified that he had expended in this case 236.91 hours on behalf of the intervenors.[3] The district court did not make a precise finding that the attorney's figure of 236.91 hours was accepted as a credible raw figure. The court, however, either impliedly accepted this figure or assumed for purposes of discussion that it was correct; it is clear that its decision is not based upon a theory that 236.91 hours is an incorrect raw figure.[4]
 
 
 6
 The findings of the district court that are critical in this appeal go to matters other than the gross amount of time spent or allocated. The court found that the principal responsibility for the prosecution of the suit was upon EEOC and that the benefits resulting to the intervenors were primarily brought about by EEOC's efforts rather than those of counsel for the intervenors. It found that the discovery efforts of intervenors were sparse and sketchy and that they relied on EEOC's prosecution of the case. The court noted that prior to the intervenors becoming formal parties in November they had conducted no formal discovery, and that after becoming parties they had filed interrogatories but that the information sought could have been obtained from similar interrogatories previously filed by EEOC and answered by the defendants. After becoming parties but before settlement, the intervenors took 15-20 hours of depositions. The district court found that records of the defendant were made available to EEOC and that counsel for the intervenors had the opportunity to examine them as early as June 1977 but that he examined neither the original records nor the copies in the possession of EEOC. The intervenors wished to use law students to examine the records rather than having their counsel examine them. Defendant objected to this as a breach of the confidentiality of their records and suggested that the intervenors rely upon the examination by EEOC. The district judge agreed that the use of law students was inappropriate. The commission conducted the examination and the intervenors relied thereon. We cannot say that the district court was plainly erroneous in making the foregoing findings.
 
 
 7
 The position of appellants is that before they became parties on November 2 they were "jointly litigating" the case with EEOC, and that all time spent before November 2 must be considered in assessing an attorney's fee award. While the district court made no specific finding, it is clear that it attached little significance to much of the pre-November 2 time. We cannot say that this approach is wrong. Unquestionably a considerable part of counsel's time before November 2 was spent in the dispute over whether the putative intervenors had to reveal the identity of Lawyers A-D in order to intervene. Until November 2 it was not settled that the putative intervenors would ever become parties, because they were not willing to comply with the condition precedent of revealing the names of the anonymous lawyers.[5] We cannot say that as a matter of law the calculus for an award must include time spent by counsel in attempting to support the terms and conditions on which his clients will intervene in a case filed by someone else. In SMU v. Wynne and Jaffe, 599 F.2d 707 (5th Cir. 1979), one of the cases filed by intervenors' counsel against other Dallas law firms, this court rejected the contention of the intervenors therein that they were entitled to keep their identities confidential.
 
 
 8
 Intervenors also included in their claim work done during March 1977 in preparing a letter to the district judge supporting the EEOC in resisting defendant's motion to dismiss. We are not certain that a judge can properly include in an attorney's fee award compensation for efforts of a non-party in support of the position of a party, but it is certain that the judge is not required to include it.
 
 
 9
 Without question, counsel for intervenors has undertaken a difficult cause, one hardly popular with the Dallas bar. He is partly responsible for a result beneficial to his clients. The case has been hard-fought with intense feeling on both sides, and neither side has made the pathway easy for the other side. However, some of the fervor of the cause has crept unduly into arguments made to us on appeal. The intervenors' approach is that they are absolutely entitled to an attorney's fee award calculated upon the 236.91 hours their attorney referred to, and at the hourly rate that he stated was usual for him,[6] and any award less than this is a "reduction" of their attorney's "fee" to $10.55 per hour. Appellants assert that this "reduction" was imposed by a judge unsympathetic to the work of lawyers in civil rights cases and as "punishment" for counsel's representation of an unpopular cause against a prominent law firm. They describe the award as a "gratuity for work the district court would rather not have had done,"[7] and argue that in setting the award the judge should have considered that their counsel was "responsible" for bringing the suit although EEOC filed it. These arguments misconceive many of the principles governing awards of fees, they are not supported by the record in this case, and we reject them. Intervenors sharply criticize the district judge as neither understanding nor sympathetic to their argument that Lawyers A-D must be permitted to remain anonymous; as it turned out, the judge was correct. SMU v. Wynne and Jaffe, supra.
 
 
 10
 Intervenors say that the district judge discriminated against their attorney because he is a law teacher rather than a full time practitioner and thereby penalizes all law teachers who serve as counsel in public interest litigation. This argument springs from the district judge's inquiring whether counsel had the overhead expense of a law office and, finding that he did not, noting this fact in his opinion. This was not an inappropriate inquiry. Intervenors are not "punished" because they retained a teacher; rather the judge's view merely reflects the reality that some portion of a fee award may be allocable to reimbursing counsel for overhead expenses he has incurred; if he has incurred none, this may be considered. Indeed in some instances district judges require that testimony bearing on requests for attorney fees include information on overhead expenses incurred.
 
 
 11
 The defendants have not been free of hyperbole. They have urged to us that neither counsel for the intervenors nor EEOC achieved any benefit for intervenors because the settlement agreement ultimately reached was substantially the same as an agreement proposed before suit was filed and rejected by those who ultimately became intervenors.[8] We have laid the two agreements side by side and compared them. Defendant's argument is egregiously wrong, and it should not have been made.
 
 
 12
 AFFIRMED.
 
 TATE, Circuit Judge, dissenting:
 
 13
 I respectfully dissent.
 
 
 14
 The district court fixed an attorney's fee of $2500 for 236 hours of work by the civil rights claimants' attorney. In so doing, I respectfully suggest, the lower court failed to articulate and consider the factors suggested as appropriate by Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). This, alone, should require a remand. Additionally, however, and perhaps more egregious an abuse of its fee-fixing discretion in the matter, the district court order on its face erroneously restricted the fee to about $10 per hour (about three times the minimum wage for unskilled workers) for improper reasons[1] that overlook (a) that a law professor's expertise may justify a usual fee (with only slight reduction from that allowable for those of similar expertise, due to lack of overhead), and (b) that negotiation, consultation, and research efforts prior to a formal intervention in a lawsuit are compensable (at least if they contribute to a favorable result), as well as are the comparatively few hours that might thereafterwards be spent in concluding and formalizing a settlement.[2]
 
 
 15
 * If I read the majority correctly, it concedes (a) that the appellant attorney spent 236.91 hours in aid of the present claim, (b) that the attorney's usual rate of compensation, even in non-civil rights cases, is $60 per hour (and we can almost take judicial notice that this is a reasonable and far from unusual fee[3]), (c) that (as the district court found) "the attorney for the intervenors is fully qualified to represent the intervenors and has adequately represented them in a professional capacity", and (d) that the final settlement agreement achieved by the female lawyers complaining of sex discrimination was substantially better than the conciliation agreement initially proposed by the defendant law firm.
 
 
 16
 Where the majority and I part company, is in the majority's uncritical acceptance of the district court's reason for disallowing a normal fee despite all of the above factors the majority's approval of the low fee because the trial court "attached little significance to much of the pre-November time (i. e., pre-formal intervention efforts)." The majority admits that the court "made no specific finding" as to this issue, but states that "(w)e cannot say that this approach is wrong" in disallowing compensation for pre-intervention time. As I have tediously attempted to explain in the margin (see note 2 supra ), on its face the district court's approach seems to indicate, not that the pre-intervention time did not produce valuable results for the civil rights claimants, but that (even if so) it was not compensable because accomplished prior to formal intervention in the suit initially filed by the EEOC (at the instigation of the civil rights claimants, and under an understanding between the claimants and the EEOC that they would jointly litigate the action). This erroneous reasoning by the trial court is the principal reason for its apparent abuse of discretion in allowing so small a fee,[4] and the majority errs by failing to remand for a full explication in order that these erroneous reasons for disallowing a proper attorney's fee would be exposed for appellate review.
 
 II
 
 17
 The Civil Rights Act, Section 706(k), 42 U.S.C. § 706(k), provides that the award of attorney's fees rests within the discretion of the district court. However, this discretion must be exercised within approved guidelines. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974).
 
 
 18
 In Johnson, we held that the district court should formally elucidate the factors which contributed to its attorney's fees award and that the following guidelines should control the district court's decision: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case: "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant . . . Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court;" (11) the nature and length of the professional relationship with the client: "A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office. The Court may appropriately consider this factor in determining the amount that would be reasonable;" (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).
 
 
 19
 Almost all of these factors, if methodically applied, would indicate to be appropriate an award of attorney's fees substantially greater than the $2,500 awarded for the 236 hours legal work that contributed to an effective settlement agreement aimed at ending sex discrimination against hiring women by the major Dallas law firms. The award of the present insubstantial fee is contrary to the legislative purpose of the attorney's fee provision "to effectuate the congressional policy against racial (and other) discrimination," Johnson, 488 F.2d at 716, and it is in derogation of the principle expressed by us that "(a)dequate compensation is necessary . . . to enable an attorney to serve his client effectively and to preserve the integrity and independence of the profession", Id. at 719-20.
 
 
 20
 In my opinion, our learned trial brother fell into error through a failure to attempt to articulate, as commanded by Johnson, the factors which should have been (but were not) considered by him. As we have stated, in computing reasonable attorney's fees, the district judge must "explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in Johnson affected his decision." Matter of First Colonial Corp. of America, 544 F.2d 1291, 1300 (5th Cir. 1977). Unless a district court explicates the bases of its decision, this court is unable to review properly the propriety of a fee award. Fain v. Caddo Parish Police Jury, 564 F.2d 707, 709 (5th Cir. 1977).
 
 III
 
 21
 My esteemed brothers of the majority err, I respectfully suggest, by failing to remand for proper elucidation of the reasons for the low attorney's fee in the light of the Johnson factors, and, instead, in attempting to explain and to justify what appears from the face of the district court's reasons to be an abuse of its discretion and the disallowance of an earned fee (as Johnson -tested) because of an erroneous reduction based on factors (see notes 1 and 2 supra ) not accorded recognition by our jurisprudence.
 
 
 
 [1]
 42 U.S.C. §§ 2000e-2000e-17 (1974)
 
 
 [2]
 After oral argument in this appeal, by an unpublished order, we retained jurisdiction of the appeal but ordered a limited remand for a decision by the district judge on whether his order awarding attorney fees was a judgment of the district court (that would be reviewable by appeal), or a mere contractual implementation of the settlement agreement (possibly reviewable by a suit based on the settlement agreement as a contract, and possibly not reviewable at all). The district judge held that his order was entered pursuant to his jurisdiction over this case. Because of the peculiar provisions of the settlement agreement concerning attorney fees we are not free from doubt, but we conclude dubiously that we have jurisdiction to review the district judge's award
 
 
 [3]
 In two similar suits against two other large Dallas law firms this attorney had been counsel for the SMU Association of Women Law Students and individual lawyers, who had been plaintiffs in those cases. He had not kept separate time records for each case, and his allocation of time to the present case was at least in part arbitrary
 
 
 [4]
 The court found that counsel was qualified to represent the intervenors and had represented them adequately
 
 
 [5]
 "Without such limitation (on the disclosure of identity) . . . the Association and Lawyers A, B, C, and D would not have litigated." Intervenors' brief p. 26
 
 
 [6]
 His testimony on hourly rate barely reaches, if it reaches at all, establishing what the going rate is in Dallas for services of the type performed
 
 
 [7]
 Brief p. 22
 
 
 [8]
 Inter alia : "(The settlement agreement) did not differ substantially from the EEOC Conciliation Agreement rejected by Intervenors' attorney over a year earlier." Defendant's brief p. 7
 
 
 [1]
 The first two reasons cited by the district court for its allowance only of an insufficient fee were: "the fact that the attorney for intervenors is employed by a university and without any of the ordinary office overhead; (he) did not formally become a party to this case until approximately 30 to 40 days before a final settlement was reached and approved by the court . . ."
 
 
 [2]
 In addition to the two factors quoted in note 1 supra, the court stated, following its finding that intervenors did not formally become a party until 30 to 40 days before a final settlement, as the remaining two reasons for limiting the attorney's fee: "that the discovery initiated by the intervenors (i. e., in the 30-40 days after intervention) was sparse and sketchy because of intervenors' reliance on EEOC's prosecution of the case; and the further fact that the benefits resulting to the intervenors were principally due from the EEOC's efforts (see below) rather than the attorney for the intervenors
 In the context of the order, in my opinion, the district court contemplated that only post-formal appearance litigation efforts by the intervenors' attorney could be considered in fixing his fee the italicized phrase, in my opinion, was intended to mean that the EEOC's pre-intervention litigation efforts were alone considered as contributing to the result, without any consideration whatsoever of the intervenor's attorney's consultations, research, and negotiation that, in conjunction with the EEOC's efforts, contributed substantially to the much better terms achieved by the final settlement, as compared to those offered by the initial conciliation agreement. I am reinforced in my interpretation that the district court regarded as non-compensable any non-litigation and pre-intervention lawyer time, because of its earlier summary of the facts, in which it concluded "that the principal responsibility for the prosecution of this lawsuit was that of the EEOC and that the intervenors were depending at all times upon the expertise of the EEOC and its lawyers in the actual trial and preparation of the trial of this case."
 
 
 [3]
 The appellant's conceded expertise would justify this figure (less perhaps $10 an hour for lack of overhead), if we could take judicial notice. (His usual fee for civil rights cases was $75-$100 per hour.) Allowances of $30 per hour for those of less skill undertaking less unpopular causes are not uncommon in the reports
 
 
 [4]
 I should add that the record shows without substantial contradiction that the attorney for the intervenors, prior to formal intervention, engaged in substantial negotiation efforts along with the EEOC to produce a better final settlement than the initial conciliation agreement (see hearing of December 5, 1977, pp. 16-18, and supporting time sheets of the attorney), which efforts the majority concedes at least inferentially were successful