IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-2679
_____


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellee,

RHONDA L. GOERLITZ,

Intervenor-Plaintiff
Appellee-Cross Appellant,

versus

CLEAR LAKE DODGE, ET AL.,

Defendants,

GULF COAST DODGE, INC., d/b/a
CLEAR LAKE DODGE,

Defendant-Appellant
Cross-Appellee.

****************************************************************
_____

No. 92-2859
_____


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

WALTER R. GRIMES,

Appellant,

versus

RHONDA L. GOERLITZ,

                                        Intervenor-Plaintiff
                                        Appellee,

                        versus

CLEAR LAKE DODGE, ET AL.,

                                        Defendants.
_____

          Appeals from the United States District Court for the
                      Southern District of Texas
_____
                         (June 24, 1994)

Before JOHNSON, GARWOOD, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     The Equal Employment Opportunity Commission, on behalf of Rhonda Goerlitz brought this sex discrimination action--in which Goerlitz later intervened personally to raise state law issues--against Gulf Coast Dodge, Inc., claiming that Gulf Coast fired Ms. Goerlitz because of her pregnancy.  The jury returned a defendant's verdict in favor of Gulf Coast on all state law issues.  The district judge ruled in favor of Ms. Goerlitz on her Title VII claims.  We affirm both the jury and the judge.

     In addition to these merits issues, we reverse the district court's award of attorney's fees essentially because an award in this case, in which the plaintiff was adequately represented by the EEOC on her Title VII claims and the plaintiff lost her individually raised claims, would constitute a payment for redundant attorneys and constitute a windfall for Goerlitz's

attorneys. Finally, we affirm the district court's imposition of sanctions on Gulf Coast's attorney in connection with post-trial matters.

I

Gulf Coast hired Rhonda Goerlitz to be a customer service representative ("CSR"). Goerlitz was hired in probationary status for the first ninety days at $1400 a month with a raise after that to $1500 a month if given permanent status. When she began work on July 15, 1990, Goerlitz was about one month into a pregnancy.

She worked with automobile purchasers to assure that the vehicle was clean when delivered, to demonstrate how to operate various features on the automobile like the cruise control and the radio, and to show the location of the spare tire. In the case of a van purchase, her job included demonstrating how to fold down the sofa bed.

After about one and a half months on the job, and several weeks after she revealed her pregnancy, Goerlitz was taken out of her job as a CSR and was assigned temporarily as a dispatcher to fill in for vacationing employees. Goerlitz's supervisor, Don McMillan ("McMillan"), made this change in Goerlitz's assignment after he had observed her demonstrating vehicles. McMillan stated that Goerlitz was "too big" to enter vehicles properly. When McMillan transferred Goerlitz from the CSR position, he told her that when she was no longer needed as a dispatcher, he would look into finding her a clerical position.

After a few weeks as a dispatcher, on September 10, 1990, when McMillan was on vacation, Goerlitz slipped and fell on the service driveway. She was taken by ambulance to an emergency room, where it was determined that she had sprained her ankle. She returned to work the same day, but Harry McGinty, who was filling in for McMillan, instructed Goerlitz to stay home for the rest of the week and to contact McMillan upon his return the next Monday.

On September 17, Goerlitz called McMillan to ascertain her employment status. McMillan told her that he did not need anyone to work in dispatch that day. In response to Goerlitz's inquiry about her status, McMillan replied that it had not changed since their conversation in August when he had transferred her from her position as a CSR. According to McMillan, he told Goerlitz that he thought they could put together a job for her doing filing and possibly keypunch. Goerlitz asked several times during the conversation if she had been fired; McMillan answered that she had not.

Goerlitz went to see McMillan the next day, on September 18, and they once again discussed the file clerk job. On the day before the meeting occurred, however, McMillan had prepared a Personnel Action Report and had dated it effective September 12, 1990. On the form, the box labeled "TERMINATION" was checked and the following comment was written: "unable to perform her duties properly due to pregnancy." McMillan testified at trial that this report was not a termination notice, but merely a transfer slip

indicating to the company's payroll clerk which department was responsible for the employee's pay.

II

The EEOC originally brought this action against Gulf Coast, alleging that Goerlitz was terminated from her position at Gulf Coast because of her sex (pregnancy). The suit was commenced on April 1, 1991, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

Some six months later, on October 29, 1991, Goerlitz intervened. She alleged, in addition to the Title VII action, causes of action under the Texas Human Rights Act, TEX. REV. CIV. STAT. ANN. art. 5221k (Vernon 1991); the Texas Workers Compensation Act, TEX. REV. CIV. STAT. ANN. art. 8307c (Vernon Supp. 1991); intentional infliction of emotional distress; and negligent infliction of emotional distress. Goerlitz demanded a jury.

The district court granted Goerlitz a binding jury for her state law claims, but the court determined that it would submit interrogatories under Title VII to the jury only as an advisory jury, under the Civil Rights Acts of 1964. The trial began on January 6, 1992. On January 15, the jury returned its answers to the interrogatories in favor of the defendants on all claims.

On February 18, 1992, the district court made findings of facts and conclusions of law on Goerlitz's claims under Title VII.[1]

---

[1]The court noted that "the parties agreed that the claim for violations of Title VII presents questions for the Court rather

It concluded that the "EEOC and Goerlitz established through direct testimony and documentary evidence that Goerlitz's pregnancy was a substantial factor in Gulf Coast's decision to reassign her." The court held that "Gulf Coast had failed to prove by a preponderance of the evidence that the decision to reassign Goerlitz and then discharge her would have been made absent her pregnancy," or that "Goerlitz's pregnancy interfered with her ability to perform either her job as [CSR] or her job in Dispatch."

Accordingly, the district court found that Goerlitz was entitled to back pay, prejudgment interest thereon, and attorneys' fees. The court, however, accepted the jury's finding against Goerlitz on her state law claims, and denied Goerlitz's motions for judgment notwithstanding the verdict and for a new trial on her state law claims.

On August 10, 1992, Goerlitz had Gulf Coast served with a writ of execution. On the same day, Gulf Coast filed a motion to approve the supersedeas bond. Goerlitz opposed the motion to approve the supersedeas bond and sought sanctions for submitting a defective bond. On September 24, the trial court held a hearing on both motions, and the court ordered sanctions against Gulf Coast's attorney, Grimes, on October 19.

_____

than for the jury." The district court characterized the jury's verdict as "advisory fact findings on the non-jury fact questions."

Gulf Coast filed its notice of appeal on August 25, and on October 30, Grimes filed a notice of appeal from the court's order of sanctions.

## III

On appeal, Gulf Coast argues that the district court erred by entering a judgment in favor of Goerlitz on her Title VII claim when that judgment was contrary to the jury verdict in favor of the defendant on identical state law claims. Goerlitz, on the other hand, asserts that, according to the agreement of the parties, the jury verdict was not binding on the district court and that any argument to the contrary has been waived. On cross-appeal, Goerlitz argues further that the jury verdict was unsupported by the evidence, and that the district court should have granted her motions for judgment as a matter of law, or alternatively, for a new trial.

In addition to these "merits" issues, Gulf Coast also appeals two ancillary rulings. Gulf Coast argues that the trial court abused its discretion, first, in awarding attorneys' fees to Goerlitz's attorney, and, second, by imposing sanctions on Gulf Coast's attorney, Walter Grimes. We will address each of these issues in turn.

A

(1)

Gulf Coast's first claim is that the district court erred when it found in favor of Goerlitz on her Title VII claim. It argues that the jury verdict on the state law claims, which decided all relevant issues against Goerlitz, was binding on the district court. In support, Gulf Coast cites the Eleventh Circuit's decision in <u>Lincoln v. Board of Regents</u>, 697 F.2d 928 (11th Cir.), <u>cert. denied</u>, 464 U.S. 826 (1983), which stated:

> An action for reinstatement and backpay under Title VII is by nature equitable and entails no rights under the seventh amendment. An action for damages under § 1981, however, is by nature legal and must be tried by a jury on demand. When legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both. <u>When a party has the right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim.</u>

<u>Id.</u> at 934 (Wisdom, J.) (emphasis added) (citations omitted). Furthermore, Gulf Coast argues that the Fifth Circuit has adopted this holding in <u>Ward v. Texas Employment Commn'r</u>, 823 F.2d 907 (5th Cir. 1987).

Although it is not entirely clear whether the <u>Lincoln</u> holding should apply in this circuit beyond the facts of <u>Ward</u>, we do not reach that question today. Instead, we hold that Gulf Coast waived its right to a binding jury verdict.

The conduct in this case occurred before, and the trial took place after, the effective date of the Civil Rights Act of 1991,

-8-

which enacted the right to a jury trial on Title VII claims. Throughout the district court proceedings, Gulf Coast argued that the Civil Rights Act of 1991, and its right to a jury trial, should not be retroactively applied.[2]  The district court agreed with Gulf Coast, and thus ordered that the selected jury would be only advisory as to the equitable Title VII claim.  Gulf Coast fully agreed with this decision and repeatedly and consistently asserted the view that the district court was the fact finder in the Title VII case.  Gulf Coast never argued before the district court that Ward and Lincoln applied to make the jury verdict binding.  In fact, even in its post trial motion for judgment under Rule 52(a) Gulf Coast characterized the verdict as "only advisory to the Court, on the . . . Title VII claim."

Because Gulf Coast argued for, and fully supported the court's ruling that the jury would be only advisory on the Title VII case, Gulf Coast waived any right that it might otherwise have had. See Floyd v. Kellogg Sales Co., 841 F.2d 226, 229-30 (8th Cir.) cert. denied, 488 U.S. 970 (1988); see also Rideau v. Parkem Industrial Services, Inc., 917 F.2d 892, 896 (5th Cir. 1990) (stating that a party can waive a Seventh Amendment right to a jury trial).  See Hamman v. Southwestern Gas Pipeline, Inc., 821 F.2d 299, 308 (5th

---

[2]This position is consistent with the Supreme Court's recent decision in Landgraf v. USI Film Prods., 1994 LEXIS 3292 (April 26, 1994), which affirmed our decision in Landgraf, 968 F.2d. 427 (5th Cir. 1992), cert. granted, in part, 113 S.Ct. 1250 (1993).

Cir. 1987).[3]  In sum, it is clear that under these circumstances the district court was not bound to apply the findings of the jury in determining the Title VII claims.  See Verdin v. C & B Boat Co., 860 F.2d 150, 154 (5th Cir. 1988).

(2)

Our task thus becomes to review the merits of the district court's Title VII findings.  A district court's judgment cannot stand where its findings are clearly erroneous.  FED. R. CIV. P. 52. "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed."  Cupit v. McClanahan Contractors, 1 F.3d 346, 348 (5th Cir. 1993) (citing United States v. Gypsum, 333 U.S. 364 (1948)). We are not permitted to re-weigh the evidence on appeal simply because we disagree with the choices made by the district court. Anderson v. Bessemer City, 470 U.S. 564, 573-74, ___ S.Ct. ___, ___ (1985).  But we will overturn the district court where there is only one permissible view of the weight of the evidence.  Amadeo v. Zant, 486 U.S. 214, 225-26, --- S.Ct. ___, ___ (1988); Chaney v. City of Galveston, 368 F.2d 774, 776 (5th Cir. 1978).  Furthermore, this same standard applies even when an advisory jury has suggested

_____

[3]Furthermore, this circuit has a long-standing rule that it will not consider for the first time on appeal an argument not made to the district court.  Earvin v. Lynaugh, 860 F.2d 623, 627-28 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558 (1989).

contrary findings.  Fed. R. Civ. P. 52(a); <u>Verdin v. C & B Boat</u>
<u>Co.</u>, 860 F.2d 150, 154 (5th Cir 1988).

In the present case, the evidence adequately supports a
finding that Gulf Coast transferred Goerlitz because of her
pregnancy and, ultimately, discharged her for that same,
impermissible reason.  The evidence, for example, reveals the
undisputed fact that McMillan completed and signed a Personnel
Action Report regarding Goerlitz on which he checked the option
labelled "TERMINATION" and noted "UNABLE TO PERFORM DUTIES PROPERLY
DUE TO PREGNANCY."  McMillan also authorized that  Goerlitz be
given severance pay when he filled out the Personnel Action Report.
Furthermore, several of the plaintiff's exhibits demonstrate that
when Gulf Coast employees are transferred, "TERMINATION" is not
checked on the Personnel Actions Report, and the details of the
transfer are noted.

This evidence fully supports the finding that Goerlitz was
fired from her job; it adequately refutes Gulf Coast's contention
that she was transferred and that she quit.  In short, the evidence
will support the finding that the reason for Goerlitz's termination
was her pregnancy.  Although other evidence may support a contrary
finding,[4] we hold that the district court committed no error in

---

[4]Specifically, there was a great deal of testimony concerning
the manner in which Goerlitz carried out her duties as a customer
service representative.  First, there was testimony that Goerlitz
was too big to properly enter and exit the vehicles that she worked
in.  At the same time, however, the evidence showed that Goerlitz
had gained only nine pounds from her pregnancy when she worked at

entering judgment against Gulf Coast on the Title VII case.[5]

Gulf Coast. Further, there was evidence that Goerlitz wore clothing that was not appropriate for her job, and that on at least one occasion her clothing "rode up" on her to the point that a customer was embarrassed--thus, reflecting poorly on Gulf Coast. Finally, with respect to Goerlitz's job performance, McMillan testified that he received several complaints about Goerlitz, that she had displeasing mood swings, that on at least one occasion, she took several hours for lunch without the permission of her supervisor, and on yet another occasion, Goerlitz was unavailable and nonresponsive to McMillan's page. From this testimony, a jury could reasonably conclude that Goerlitz was terminated because of her job performance, and not because of her pregnancy.

In addition, the testimony presented would even support a reasonable jury in concluding that McMillan made every good faith effort possible to keep Goerlitz at the dealership even though she was not performing her job satisfactorily. The testimony showed that McMillan transferred Goerlitz to dispatch, believing that she would perform better in that capacity because she had prior experience in dispatch. Further, according to testimony, the transfer was made, in part, to satisfy Goerlitz's own scheduling request, and McMillan testified that Goerlitz seemed eager to try it. After Goerlitz fell in the driveway of the dealership, however, and then was absent for a week, the testimony shows that she called McMillan, repeatedly asked if she had been fired, and ignored McMillan's assurances that she had not been fired. A reasonable jury could have believed that Goerlitz's accosting attitude in this final interchange caused Goerlitz's termination-- in spite of McMillan's good faith efforts to continue her employment.

[5]Goerlitz also argues that the district court erred in denying her motions for a judgment notwithstanding the verdict and for a new trial on her state law claims. A motion for JNOV should be granted where reasonable minds could reach only one conclusion on the evidence as presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505, 2511 (1986); Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). In the present case, however, we find that the evidence presented was such that reasonable minds could disagree on its meaning. See supra note 4. Accordingly, we hold that the district court committed no error by entering a plaintiff's judgment on the Title VII case and, at the same time, letting stand the defendants' jury verdict on the state law claims. Cf. Lytle v. Household Manufacturing, Inc., 494 U.S. 545, 110 S.Ct. 1331, 1338 (1990) (explaining that the judge's role in ruling on a motion for JNOV is quite different from his role as a factfinder).

Furthermore, we hold that the court committed no error in calculating the amount of its damage award.[6]

                                    B

In addition to its damage award, the district judge ordered Gulf Coast to pay Goerlitz's attorneys' fees in the amount of one hundred thirty-two thousand, nine hundred twenty-six dollars and twenty-five cents ($132,926.25). The Civil Rights Act of 1964 provides that a "prevailing party" in a suit brought under Title VII is entitled to recover her attorneys' fees and costs. 42 U.S.C. § 2005e-5(k). The award of attorneys' fees, nevertheless, rests within the discretion of the district court.[7] We will not reverse an award of attorneys' fees unless the trial court abused

---

A district court, nonetheless, can grant a new trial where the verdict returned is against the great weight of the evidence. This decision, however, is committed to the discretion of the trial judge, and where the judge has denied a new trial motion, our review is very narrow. Jones v. Wal-Mart Stores, Inc., 870 F.2d 982, 987 (5th Cir. 1989). Given that the evidence presented would support a verdict in favor of either party, we find that the district court committed no reversible error in denying Goerlitz's new trial motion. Finally, we note that our decision to uphold the district court's Title VII judgment makes moot Goerlitz's JNOV and new trial arguments to the extent that she sought to recover for her economic damages through her state law claims, because the court's Title VII judgment provides Goerlitz a full recovery of her economic damages.

[6]Gulf Coast contends that it is entitled to a reduction of its back pay liability because it made an "unconditional offer" to reinstate Goerlitz to her prior position in November of 1990. We agree with the district court that this "offer" did not satisfy the requirements of Ford Motor Co. v. EEOC, 458 U.S. 219, 102 S.Ct. 3057, 3063 (1982).

[7]42 U.S.C. § 706(k).

its discretion or based its award on clearly erroneous findings of fact. <u>Johnston v. Harris County Flood Control District</u>, 869 F.2d 1565 (5th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1019 (1990).

The action before us was originally brought by the EEOC. It asserted Goerlitz's rights only under Title VII of the Civil Rights Act of 1964. All other claims asserted in this case were not part of the original suit. On October 29, 1991, more than six months after the original suit was filed, Goerlitz, through her private attorney, intervened, and added state law claims. As to each and every claim added to this case by Goerlitz, the jury found in favor of Gulf Coast Dodge. In short, the EEOC brought each and every <u>prevailing</u> claim; Goerlitz brought each and every <u>rejected</u> claim.

We recognize, however, that after Goerlitz intervened in this case, her private lawyer represented her not only on her losing state law claims but also on claims under Title VII. Goerlitz obtained a favorable judgment on her Title VII claims; in this sense, she qualifies as a "prevailing plaintiff" under our "generous formulation" of the term.[8] However, "[i]n some circumstances, even a plaintiff who formally `prevails' . . . should receive no attorney's fees at all." <u>Farrar</u>, ___ U.S. at ___, 113 S.Ct. at 575. This case presents one such circumstance.

---

[8]"A typical formulation is that `plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983) (quoting <u>Nadeau v. Helgemoe</u>, 581 F.2d 275, 278-79 (1st Cir. 1978)).

There is no doubt that awarding attorney's fees to prevailing plaintiffs in Title VII cases often serves the goal of "ensur[ing] `effective access to the judicial process' for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937 (1983).[9] When assessing the appropriateness of attorneys' fees, however, we must recognize the well-settled principle that attorney's fees must be awarded only for those lawyer hours that are reasonably necessary to adequately prosecute the case. City of Riverside v. Rivera, 477 U.S. 561, 568, 106 S.Ct 2686, 2691; Hensley, 461 U.S. at 434, 103 S.Ct. at 1939. Attorney's fees must not be awarded for attorney hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434, 103 S.Ct. at 1939-40.

In our view, an award of attorney's fees in this case--which can only be granted in connection with the Title VII judgment-- would compensate for redundant and unnecessary hours. We think-- absent unusual exceptions not here present--that it is patently "redundant" and "unnecessary" for a private attorney to participate in the litigation of identical claims that are simultaneously being pursued by the government-paid attorneys of the EEOC. When the EEOC prosecutes the civil rights of an individual, that individual

---

[9]Hensley actually discusses 42 U.S.C. § 1988, which was "patterned upon the attorney's fees provisions contained in Title . . . VII of the Civil Rights Act of 1964." Hensley, 461 U.S. at 433 n.7, 103 S.Ct at 1939 n.7. The standards, however, are generally applicable to "all cases in which Congress has authorized an award of fees to a `prevailing party.'" Id.

certainly has obtained "effective access to the judicial process." Furthermore, the present case was a typical, simple Title VII case in which the EEOC asserted the rights of a single plaintiff, essentially on a single claim, seeking back-pay damages of less that $20,000. The EEOC adequately staffed this case, having undertaken discovery using two attorneys.

We have held that when a case is "not complex" and when "the efforts of co-counsel were . . . not necessary, and thus not reasonable," disallowing fees to that co-counsel was "consistent with the policy of rewarding efficient litigators." Curtis v. Bill Hanna Ford, Inc., 822 F.2d 549, 552 (5th Cir. 1987). This case is no different. The efforts of Goerlitz's private attorney were unnecessary for the prosecution of the prevailing Title VII claim; in order to obtain a fee, Goerlitz's attorney must brush away her losses and bootstrap herself to the claims that were being competently prosecuted by other attorneys before she even entered the case. Thus, it would be particularly unjustified to award attorney's fees in the present case. Accordingly, we hold that no fee is the only "reasonable fee under the circumstances of the case." Blanchard v. Bergeron, 489 U.S. 87, 96, 109 S.Ct. 939, 946 (1989). Cf. EEOC v. Strasburger, Price, Kelton, Martin and Unis, 626 F.2d 1272, 1275 (5th Cir. 1980) (upholding a very low award (about $10 per hour) for a private attorney who, by intervening in

a "hard-fought" EEOC action, was "partly responsible for a result

beneficial to his clients").[10]

---

[10]Furthermore, the Supreme Court has recently reiterated that fee awards "were never intended to `produce windfalls to attorneys.'" <u>Farrar v. Hobby</u>, ___ U.S. ___, 113 S.Ct. 566, 575 (1992). Thus, our goal in these cases is to strike a delicate balance by awarding fees that are "adequate to attract competent counsel, <u>but which do not produce windfalls to attorneys</u>." <u>Hensley</u>, 461 U.S. at 430 n.4, 103 S.Ct. at 1938 n.4 (emphasis added). An award of attorney's fees in the present case would constitute a windfall in the sense that the because Goerlitz lost on each and every state law claim she presented, she was not entitled to recover attorney's fees under Texas law. <u>See</u> TEX. REV. CIV. STAT. ANN. art. 5221k (Vernon 1991). Thus, allowing her to recover fees on the original Title VII claims provides a windfall from which to pay her attorneys. Accordingly, for the further reason that an attorney's fee award in the present case would produce a "windfall" to Goerlitz's private attorney, we cannot affirm the district court. <u>See</u> <u>Farrar</u>, ___ U.S. at ___, 113 S.Ct. at 575.

C

Finally, we turn to address Gulf Coast's argument that the district court erred by imposing sanctions on its attorney, Walter Grimes. The appropriate standard of review in assessing the district court's award of Rule 11 sanctions is the abuse of discretion standard. Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 872 (5th Cir. 1988). The district court imposed these sanctions because Grimes repeatedly failed to comply with FED. R. CIV. P. 62(d) and the applicable case law in filing a supersedeas bond in the present action, and because Grimes made no "good faith argument for the extension, modification, or reversal of existing law." FED. R. CIV. P. 11. It imposed sanctions in the amount of the "reasonable expenses incurred by Goerlitz in connection with the defective supersedeas bond."

It is clear that under Rule 11, an attorney has the obligation to conduct "a reasonable inquiry into the law such that the document [that he signs] embodies existing legal principles." Yet, it is equally clear that when Goerlitz attempted to enforce the judgment against Gulf Coast, Grimes' response was to file an incomplete, insufficient supersedeas bond.[11] Acting to protect the

_____

[11]First, the defense attorney filed the supersedeas bond prior to appealing the judgment of the district court. FED. R. CIV. P. 62(d) specifically provides that a bond "may be given at or after the time of filing the notice of appeal." Further, the amount of the bond failed properly to cover costs as required under the law. See Metz v. United States, 130 F.R.D. 458, 459 (D. Kan. 1990); Avirgan v. Hull, 125 F.R.D. 185, 188 (S.D. Fla. 1989) (citing Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey

-18-

interest of her client, Goerlitz's attorney filed an opposition to the motion to approve the supersedeas bond, pointing out the defects in the bond, and requesting sanctions against Grimes. Grimes then filed an amended supersedeas bond that corrected several of the problems with his original bond, but which still failed to give an adequate assurance that the bond would be effective.[12]

Given that Grimes signed a supersedeas bond that clearly failed to comport with the requirements called for by law, and given that Goerlitz's counsel acted reasonably in seeking to protect the interests of her client, we cannot say that the district court abused its discretion in imposing sanctions against Grimes in the amount ordered. Accordingly, the order for sanctions is affirmed.

IV

Having found that Gulf Coast waived any right that it might have had to a binding jury verdict for its equitable claims, and having found that the district court's findings in favor of Goerlitz on her Title VII claims were not clearly erroneous, we AFFIRM the Title VII judgment of the district court. Further, we

---

Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979)).

[12]Specifically, Mr. Grimes signed the bond as "attorney-in-fact," but there was no evidence that Mr. Grimes had the power to commit Gulf Coast to pay the bond. At a hearing on the matter, the district judge ruled that the bond would be considered insufficient until the president of Gulf Coast signed the bond.

hold that the district court committed no reversible error in denying Goerlitz's JNOV and new trial motions, nor in the imposition of sanctions against Gulf Coast's attorney, Walter Grimes and AFFIRM in this respect.  We REVERSE the district court's award of attorney's fees to Goerlitz, because we find that the hours billed by Goerlitz's private attorney, as related to the prevailing Title VII claim, were redundant and unnecessary, and because Goerlitz lost on all claims she individually raised as intervenor, an award of attorney's fees to her would constitute a windfall.  The district court is accordingly

AFFIRMED in part and REVERSED in part.
REMANDED for entry of judgment.